

555 California Street  
12th Floor  
San Francisco, CA 94104

415.875.2300  
Fenwick.com

Dean S. Kristy  
dkristy@fenwick.com  |  +1 415-875-2387

February 16, 2024

**VIA ECF**

Hon. Edgardo Ramos  
United States District Judge  
Thurgood Marshall United States Courthouse  
40 Foley Square, Courtroom 619  
New York, NY 10007

        Re:    <u>SEC v. Sun, et al., Case No. 1:23-cv-2433-ER (S.D.N.Y)</u>

Dear Judge Ramos:

We submit this pre-motion conference request and letter on behalf of defendants Tron Foundation Limited ("Tron Foundation"), BitTorrent Foundation Ltd. ("BitTorrent Foundation"), Justin Sun, and Rainberry, Inc. ("Rainberry") (collectively, "Defendants") pursuant to this Court's Individual Practice Rule 2.A.ii, laying out the basis for Defendants' anticipated motion to dismiss all claims in this action.

This action is an overreaching attempt by the SEC to bring claims against three foreign defendants who are not subject to the jurisdiction of this Court. Tron Foundation and BitTorrent Foundation are foreign entities created under Singapore law, are domiciled there, and never had U.S. offices. Compl. ¶¶ 13, 14. Mr. Sun is a foreign national, domiciled overseas. *Id.* ¶ 12.[1] The SEC seeks to hold Defendants liable under U.S. securities laws for an innovative, international project known as "Tron," which leverages blockchain technology to create a decentralized entertainment network. *Id.* ¶ 28. The SEC bring claims related to three digital assets (or "tokens"), TRX (ERC-20), TRX (TRON),[2] and BTT (TRC-10) — each of which were initially distributed only to non-U.S. residents, as the SEC admits. *Id.* ¶¶ 35, 69.

According to the Complaint, Defendants allegedly violated the registration and other provisions of the federal securities laws by (1) awarding a limited number of these assets in worldwide social media contests and in airdrops to existing token holders (*id.* ¶¶ 50-62); (2) third party secondary trading of the three digital assets on various marketplaces (*id.* ¶¶ 88-156); (3) "wash trading" TRX (in some form) by engaging in market making transactions that were negligible in scope and effect, representing a tiny fraction of the total dollar value of TRX trades worldwide

---

[1] The only U.S. defendant, Rainberry, does not challenge this Court's jurisdiction over it, but disputes the claims, and submits that venue would be more appropriate in California, where it is incorporated and headquartered.

[2] TRX (TRON) is the native token of the TRON blockchain. A different, earlier token (also called TRX) existed on the Ethereum blockchain ("TRX (ERC-20)"). The Complaint omits this distinction. After the TRON blockchain launched, holders of TRX (ERC-20) could exchange it for TRX (TRON) (with the TRX (ERC-20) thereafter being destroyed).

February 16, 2024
Page 2

on the days in question (*id*. ¶¶ 4, 157-78); and (4) "aiding and abetting" nondisclosure of promotional payments notwithstanding contrary allegations in the Complaint that such disclosures were requested (*id.* ¶¶ 5-6, 179-87).

The Court should dismiss all claims against Defendants for at least the following reasons:

***First***, the Court cannot exercise personal jurisdiction over the three foreign defendants because they lack minimum contacts with the United States and the claims do not sufficiently arise from the limited contacts alleged. None of the digital assets were initially offered to U.S. purchasers, so claims based on the initial distribution of those tokens do not arise out of or relate to Defendants' forum contacts. The Court should also reject the SEC's attempt to establish minimum contacts based on claims that Defendants purportedly did not take steps to exclude U.S. persons from obtaining digital assets in various worldwide contests or giveaways, or in airdrops, or otherwise. *See, e.g.*, Compl. ¶¶ 58, 62, 102, 116. Only *affirmative* acts *directed at the forum* can establish personal jurisdiction. *See, e.g.*, *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 235 (S.D.N.Y. 2019). Nor is it enough to establish specific jurisdiction to allege that U.S. residents had the ability to trade the digital assets at issue on global secondary platforms. *See, e.g.*, *Reed Int'l, Inc. v. Afghanistan Int'l Bank*, 657 F. Supp. 3d 287, 305 (S.D.N.Y. 2023). And while the SEC cites tweets by certain Defendants, generalized communications on world-wide platforms, even if viewed as promotional in nature, do not suffice to confer jurisdiction either. *See Holsworth v. BProtocol Found.*, 2021 WL 706549, at *2 (S.D.N.Y. Feb. 22, 2021). Finally, the allegations that Mr. Sun controls the sole U.S. defendant (Rainberry), or that all defendants were "alter egos" of one another, are unsupported by the necessary particularized facts to establish such relationships and, without more, are not a basis for jurisdiction. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021) (group pleaded allegations insufficient to establish jurisdiction); *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 137 (S.D.N.Y. 2021) (ability to control an entity "does not provide for specific jurisdiction").

***Second***, the Complaint relies almost entirely on impermissible group pleading. *See, e.g.*, Compl. ¶ 2 (defining three entities and Mr. Sun as the "Sun Defendants"). The improper blurring of all defendants alone compels dismissal of the claims against them. *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014) (affirming dismissal where "complaint ma[de] only generalized and conclusory allegations regarding common ownership, employees, management, control, and decision making" between two nominally separate entities).

***Third***, the conduct at issue is predominately foreign, and *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) precludes the extraterritorial application of U.S. securities laws.[3]

---

[3] To the extent Dodd-Frank (12 U.S.C. § 53 et seq. (2010)) superseded *Morrison* with respect to Exchange Act claims and the SEC's extraterritorial reach, the Complaint similarly fails to allege the necessary, weighty domestic conduct or effects. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 540 F. Supp. 2d 438, 446 (S.D.N.Y. 2007) (sporadic U.S. conduct and indirect harm to U.S. persons insufficient).

February 16, 2024
Page 3

***Fourth***, the SEC has not adequately pleaded that any digital asset was offered or sold pursuant to an "investment contract." *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946) (an investment contract requires "a contract, transaction or scheme whereby [(1)] a person invests his money [(2)] in a common enterprise and [(3)] is led to expect profits solely from the efforts of the promoter or a third party."). Here, these elements are missing with respect to the alleged transactions. Social media contest winners and airdrop recipients did not invest money. *See SEC v. Ripple Labs, Inc.*, --- F. Supp. 3d ----, 2023 WL 4507900, at *26 (S.D.N.Y. July 13, 2023) (distributions of cryptocurrency "as part of [company's] [] initiative to develop new applications" for the blockchain did not involve investment of money where "recipients . . . did not pay money or 'some tangible and definable consideration'").[4] Nor do blind bid/ask transactions on worldwide secondary markets satisfy *Howey*'s third prong. There is no reasonable expectation of profits from the efforts of Defendants where purchasers had no reasonable expectation that their funds are being sent to Defendants. *See id.* at *22-24.

***Fifth***, the allegations of "wash trading" (in some unspecified form of TRX) lack specificity as to each defendant and ultimately are illogical. Market manipulation requires particularized facts establishing a compelling inference of scienter. The theory of scienter here, however, is not only implausible, it also is contradicted by the facts. No serious claim can be made that the alleged trades, comprising an infinitesimal portion of the daily trading volume in the token at issue, could have been expected to have ***any impact whatsoever*** on trading volumes or to induce purchases or sales. And as a memorandum quoted in the Complaint explained, these trades were not done for improper purposes, but rather to provide routine market-making to enhance liquidity on the exchange. *See* ¶¶ 169-70.

***Sixth***, as to claims that Defendants aided and abetted alleged disclosure violations by a few influencers who tweeted about tokens and the blockchain, without acknowledging having been paid, the Complaint fails to plead sufficient facts showing that each Defendant (1) knew of the primary violation (or was reckless in not knowing), and (2) provided substantial assistance.

***Finally***, Defendants lacked fair notice of the claims, which purport to reach back in time and across the ocean to govern actions unrelated to the U.S. or its securities laws. Because crypto asset regulation involves a "major question," that requires Congressional action.

                                                          Respectfully submitted,

                                                          FENWICK & WEST LLP

                                                          */s/ Dean S. Kristy*
                                                          Dean S. Kristy

cc:      All Counsel of Record (Via ECF)

---

[4] While Judge Rakoff reached a different outcome on different facts, *see SEC v. Terraform Labs Pte. Ltd.*, --- F. Supp. 3d ----, 2023 WL 4858299, at *15 (S.D.N.Y. July 31, 2023), we believe *Ripple* remains on point with the facts here.