O3EASECC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

SECURITIES AND EXCHANGE
COMMISSION,

              Plaintiff,

        v.                                23 Civ. 2433 (ER)

JUSTIN SUN, TRON FOUNDATION
LIMITED, BITTORRENT FOUNDATION
LTD., RAINBERRY, INC., *et al.*,
                                          Telephone Conference

              Defendants.

------------------------------x
                                          New York, N.Y.
                                          March 14, 2024
                                          11:30 a.m.

Before:

                   HON. EDGARDO RAMOS,

                                          District Judge

                         APPEARANCES

U.S. SECURITIES AND EXCHANGE COMMISSION
     Attorneys for Plaintiff
BY:  TIMOTHY K. HALLORAN
     ADAM B. GOTTLIEB

FENWICK & WEST LLP
     Attorneys for Defendants
BY:  JENNIFER BRETAN
     REBECCA MATSUMURA
     DEAN S. KRISTY
     CASEY T. O'NEILL

1                THE COURT:  Good morning, everyone.  This is Judge
2     Ramos.
3                Jazmin, please call the case.
4                THE DEPUTY CLERK:  In the matter of the *Securities and*
5     *Exchange Commission v. Sun, et al.*
6                Counsel, please state your name for the record.
7     Starting with counsel for plaintiff.
8                MR. HALLORAN:  Good morning, your Honor.  This is
9     Timothy Halloran for the SEC and with me is my cocounsel Adam
10    Gottlieb.
11               THE DEPUTY CLERK:  Counsel for defendants.
12               MS. BRETAN:  Good morning, your Honor.  This is
13    Jennifer Bretan of Fenwick & West.  With me today are my
14    colleagues Dean Kristy, Casey O'Neill, and Rebecca Matsumura
15    for the Tron Foundation, BitTorrent Foundation, and Rainberry,
16    Inc.
17               THE COURT:  Good morning to you all.  This matter is
18    on for a conference.  I note for the record that it is being
19    conducted by telephone.  I know that we are here at the request
20    of one or more defendants.  However, this is the first time
21    that the parties have appeared.
22               So, Mr. Halloran, let me begin with you.  Why don't
23    you tell me a little bit about this case.
24               MR. HALLORAN:  Yes, your Honor.  So obviously at the
25    motion to dismiss stage, the allegations of the complaint must

be deemed true and all inferences must be drawn in the plaintiff's favor.

Applying that standard here, the complaint alleges that Justin Sun and the three entity defendants that Mr. Sun owns and controls, took actions aimed at the United States and within the United States that violated the Federal Securities Laws.  And those actions included the marketing, offer, and sale of unregistered crypto asset securities called TRX and BTT to investors in the United States, the fraudulent wash trading of TRX on a trading platform in the United States, directing a campaign to pay celebrities in the United States to promote TRX and BTT without disclosing that they had been paid, and then lying to conceal the celebrity touting campaign.

Our complaint pleads these allegations in detail, your Honor, and, therefore, based on the arguments in defendant's premotion letter, we expect that any motion to dismiss will fail.

THE COURT:  Okay.  And who is speaking on behalf of the defendants?  Is it Ms. Matsumura?

MS. BRETAN:  It's me, your Honor.  It's Jennifer Bretan.

THE COURT:  Okay.  Ms. Bretan.

MS. BRETAN:  Thank you, your Honor.

I hear Mr. Halloran's arguments, but I believe your Honor is familiar with the nature of these cases.  And we

think, as we set out in our pre-conference papers, that there are very different issues in this case and fundamental reasons why the complaint as alleged has failed. I can walk through them for your Honor, but it's a very different case than ones that have come before it. And I believe the SEC relies very heavily on cases like *Terraform* to carry some weight here.

When you scratch the surface of this complaint, you get a lot of conclusory allegations about contacts with the United States, about what any defendant did, etc. that really do not meet the claims. So we are planning to make, first, as to the three foreign defendants, significant jurisdictional arguments that they shouldn't be in this court. When you look at the claim, when you look at the claims and what's alleged with respect to activity directed at the United States, it's a very different looking case than any of the ones that have come before it. And we think jurisdiction has not been established as to the three foreign defendants on each of the claims.

The second infirmity here is it's very hard to tell who did what. The complaint as stated relies on significantly pleading things like, Mr. Sun on behalf of Tron Foundation, BitTorrent Foundation, Rainberry, without any basis for making the allegation or saying what any one of those persons or entities did.

Unlike recent cases, we actually do think *Morrison* applies here. And particularly where the conduct alleged here,

1   predominantly, is foreign.  And, I'd like to add, when you
2   scratch the surface of the complaint, there's very little to
3   support the claim that there was a concerted effort to market
4   to U.S. or U.S. investors.
5            Also make *Howie* arguments regarding the failure to
6   adequately plead that any digital asset offer sold here was
7   done to investment contract.  When you review the complaint,
8   we're talking about things like social media context and
9   AirDrop where there's no investment of money in secondary
10  market trading, and we'll explain why, why we believe that the
11  secondary market trading alleged here doesn't satisfy *Howie*.
12           The wash trading allegations, just because they call
13  it wash trading does not mean it's wash trading, certainly
14  lacks specificity as to each defendant, and actually a logical
15  claim.  We're talking about trades that are, you know,
16  fractions of a thousandth of a percent of all trading in the
17  token at issue, could not have conceivably had any impact on
18  market or induced purchases of sales.
19           And, finally, the touting claim I heard Mr. Halloran
20  say that are directed at the United States, but there really
21  aren't sufficient facts to show when you -- and we'll argue
22  this in our motion, that every defendant knew primary violation
23  and provided substantial assistance in a disclosure violation.
24  In fact, that's the only -- with respect to celebrity, the
25  secondary liability, the aiding and abetting claim, that's the

1  only instance of a misstatement even alleged in the entirety of
2  the complaint.  And we would argue, A, it's not sufficiently
3  alleged, and B, it's nonmaterial.
4          So, you know, we have other arguments.  Your Honor, we
5  made a fair notice.  We'll make a fair notice argument and a
6  major questions doctrine argument.  In particular, when you
7  look at the kinds of claims made here about social media
8  context, tiny fraction, tiny amounts of token being awarded to
9  contest winners where it's very hard to oversee.  It's very
10 hard to -- very hard to understand how anyone would have notice
11 of the types of claims that the SEC is pursuing here.
12         We saw in the response paper that, as I said, that the
13 SEC is going to rely heavily on Judge Rakoff's decision in
14 *Terraform*.  That's a very, very different case.  There are
15 extreme facts alleged there that are not even close to present
16 here.  Failed institutional investors, hundreds of millions of
17 dollars in sales of potential investors in the U.S., loans to a
18 U.S. trading firm, significant misstatements about the use of
19 the coin, etc.  I could you go on.  And extensive contact with
20 the U.S. that are simply not here in this case.
21         So I'll stop there, your Honor.  I'm happy to go on
22 further, but that gives you a bit of a flavor I hope of why we
23 think a motion to dismiss here both on the jurisdictional
24 grounds and on the substantive grounds will show that there's
25 not a basis to proceed.

1       THE COURT:  Let me ask you, Ms. Bretan, on the major
2  question doctrine, that's a fairly new animal and I've not had
3  occasion to deal with it.  What is the basis for your major
4  question doctrine argument?
5       MS. BRETAN:  The basis for the argument, your Honor --
6  and I recognize that courts have taken different views of this.
7  But when there's an issue that is affecting the economy in some
8  significant way, and where it's not quite clear that the issue
9  has been put to the agency here, the SEC, to regulate, Congress
10 really needs to step in and say what are the bounds of the
11 regulation, and that can't be up to the design of any regulator
12 as and when.  And I know that Judge Rakoff disagreed in
13 *Terraform* that the major question doctrine is at issue in that
14 case.
15      But I don't think anyone can disagree that the
16 constant drumbeat on this issue from the whole hundreds of
17 members of Congress, disagreement among SEC commissioners and
18 even amongst agencies, suggest that it's a significant issue
19 with a significant impact on this economy.  I can't open the
20 paper these days without reading about how the U.S. is falling
21 behind in an area of new technology, like Blockchain, given the
22 regulatory environment that my colleagues are pursuing and the
23 enforcement actions that my colleagues are pursuing.  So your
24 Honor will have to open those arguments and see whether he
25 reads that someone like Judge Rakoff, maybe so.  But we think

1   there's enough here to say that it brings significant issues

2   that are in need of promotional action.

3          THE COURT:  Even in this case where, as I understand

4   your argument at least in part, the impact of your clients'

5   activities here in the U.S. are de minimus?  Again, as I think

6   is your argument.

7          MS. BRETAN:  Yes, your Honor.  But of course we're

8   making the jurisdictional arguments, but we're bringing all

9   arguments in that single motion.  In the event your Honor finds

10  that -- and of course there's one defendant that's based in the

11  United States, although there is very little, if anything,

12  alleged about that defendant.

13         If your Honor finds the case goes forward, we think

14  that question will be squarely presented.  And it's an

15  important question because apart from -- and the reason why

16  this case is proceeding like it is, is because there is a lack

17  of clarity around these issues.  There's a lack of clarity

18  around things like who's regulating social media content or

19  giveaways.  It's just not there, your Honor.  So we do think

20  they're squarely presented here in the event.

21         THE COURT:  Okay.  Mr. Halloran, I'll give you an

22  opportunity to respond.

23         MR. HALLORAN:  Yes, your Honor.  Would you like me to

24  respond -- I'm prepared to respond to all of her arguments, or

25  would you like me to only address the major questions doctrine

1    issue that you just raised?
2            THE COURT:  Why don't you address each of the
3    arguments briefly.
4            MR. HALLORAN:  All right.  Will do.
5            So, your Honor, the first argument that they raised is
6    a personal jurisdiction.  And as your Honor knows, personal
7    jurisdiction over the defendants requires two things:  That the
8    defendant purposefully directed their activities at the United
9    States, and that the claims here arise out of or relate to the
10   defendants' actions.  The complaint here alleges both of those
11   elements.
12           First, the defendants took multiple actions directed
13   at the United States, including marketing, offering, and
14   selling TRX and BTT to investors in the United States, having
15   TRX listed on a trading platform in the United States,
16   directing the wash trading of TRX on a trading platform in the
17   United States, and paying celebrities in the United States to
18   promote TRX and BTT to investors.
19           Second, the allegations of the complaint pretty
20   plainly arise directly out of and relate to those actions.  As
21   noted in our premotion letter, your Honor, in the *Terraform*
22   case, Judge Rakoff addressed similar facts to those presented
23   here and he found that the Court had personal jurisdiction over
24   the defendants who were based in Singapore because they
25   promoted the digital assets at issue to investors in the United

States. And for the same reasons, we believe that personal jurisdiction over the defendant here is appropriate.

Moving on to group pleading, your Honor. The defendants suggest that our using the phrase "Sun defendants" in the complaint to refer to four defendants is impermissible group pleading, but we disagree. The complaint alleges that Mr. Sun owns and controls the Tron Foundation, the BitTorrent Foundation, and Rainberry. So there's nothing improper or confusing about referring to those specific defendants together as the Sun defendants. And, your Honor, we submit that the case law cited in our premotion letter, which we can certainly expand on in full briefing, supports our position. We certainly understand our pleading burden under Rules 9(b) and 12(b)(6) to put each defendant on notice of the claims against them. And if the Court allows the parties to proceed to full briefing, we will demonstrate that the complaint meets the relevant standards.

Touching on exterritoriality, your Honor, which was their next argument, the allegations in the complaint here are within the territorial bounds of the federal securities fraud. Briefly, regarding the fraud claims in the complaint, Section 27B of the Exchange Act and the parallel provisions of the Securities Act, cover both conduct within the United States in furtherance of a violation, even if transactions occur overseas, and conduct occurring outside the United States that

1    has a foreseeable substantial effect within the United States.

2              So we believe there is no exterritoriality problem
3    regarding the fraud claims, and the same is true for the
4    non-fraud claims in the complaint.  In *Morrison*, the supreme
5    court held that the Exchange Act breached transactions in
6    securities listed on domestic exchanges and domestic
7    transactions in other securities.  Here, we have both of the
8    *Morrison* prongs.

9              Regarding transactions in securities listed on
10   domestic exchanges, the complaint alleges that TRX, one of the
11   tokens, was listed, offered, and sold on a trading platform in
12   the United States.  So the TRX transactions involve securities
13   listed on a domestic exchange.  And regarding domestic
14   transactions in other securities, the complaint alleges that
15   BTT, the other token, was distributed to persons in the United
16   States, who in order to receive BTT, had to purchase and hold
17   TRX.

18             Under relevant law, which we'll certainly expand on in
19   briefing, including the Second Circuit's recent decision in
20   *Williams v. Binance*, we submit the BTT distributions are
21   domestic transactions subject to the Federal Securities Laws.

22             To touch on their next argument, your Honor, which was
23   an investment contract under the *Howie* test, the parties agree
24   that the Howie decision by the supreme court sets out what is
25   an investment contract, but we disagree on its application

1 here.

2 The defendants make two arguments about why the crypto
3 asset securities here are not investment contracts under *Howie*.
4 First, they argue that people who receive TRX or BTT through
5 AirDrops or contests did not invest money under the *Howie* Test.
6 We disagree. As courts, including the Tenth Circuit have
7 explained, your Honor, and this is a quote, I'll give you the
8 cite. "Cash is not the only form of contribution or investment
9 that will create an investment contract. Instead, the
10 investment may take the form of goods and services or some
11 other exchange of value." That's the *Uselton* case,
12 U-S-E-L-T-O-N. 940 F.2d 564, 574, (10th Cir. 1991).

13 Here, your Honor, all of the offers and sales in the
14 complaint involve the investment of money or other valuable
15 consideration, such as promoting the Tron ecosystem online or
16 on social media and helping to create a market for the TRX and
17 BTT.

18 So we submit that the offers and sales alleged in the
19 complaint do involve an investment under *Howie* and they meet
20 the other prongs of the *Howie* test as well.

21 Defendants also argue that transactions on secondary
22 markets do not involve a reasonable expectation of profits
23 under the *Howie* test. That argument is based on Judge Torres'
24 opinion in *SEC v. Ripple*. And, your Honor, as we pointed out
25 in our premotion letter, in the *Terraform* decision, Judge

Rakoff expressly rejected the reasoning of *Ripple*, and we'll certainly expand on that in full briefing, your Honor. But we submit that Judge Rakoff got it right in *Terraform* and this court should follow his reasoning.

As to the next argument, your Honor, which is particularity of the wash trading allegations, your Honor, we respectfully submit that for the reasons set forth in our premotion letter, the wash trading allegations in the complaint are more than sufficient under Rule 9(b) and 12(b)(6). And I don't want to belabor that point, your Honor, but we believe they are pled with all the particularity, with all the rules required in the case law.

Their next argument, your Honor, they make the argument that we have not properly pled aiding and abetting the touting violations in the complaint. We just don't believe this is a persuasive argument at all, your Honor. As explained in our premotion letter, the elements here are simple and straightforward. On a motion to dismiss, they must be deemed true, and for the reasons in our premotion letter, we believe that we have pled each of the elements of the aiding and abetting claim.

And, finally, as to the major questions argument, your Honor, neither in their premotion letter nor during our discussion here this morning has the defense pointed to any case that would actually support their major questions doctrine

as applied here, their major questions doctrine argument as applied in this case. And, again, your Honor, in *Terraform*, Judge Rakoff squarely addressed and rejected this exact argument, and we believe that this Court should do the same.

So, your Honor, thank you for allowing me the opportunity to address those arguments. I'm happy to answer any questions about them. Otherwise, I'll stop here.

THE COURT: Okay. So what I'll do is I'll allow the defendants to make the motion. I know that, Mr. Halloran, in your December 28 letter you set forth an agreement or a schedule on consent as to when the motion can be briefed.

Did you folks want to stay with that proposed schedule, which has the initial motion being filed on March 28, which is two weeks, the SEC's response on May 2, and the reply on May 30. And we'll talk about the page limits in a second.

Did you folks want to stick with that schedule? Mr. Halloran?

MR. HALLORAN: Yes, your Honor.

THE COURT: Ms. Bretan?

MS. BRETAN: Yes, your Honor.

THE COURT: Okay. So we'll adopt that. So the motion will be due on March 28, the response will be due on May 2, and the reply on May 30. I understand the parties have also requested an expansion of the page limits to 50 pages for the main briefs and 25 pages for the reply. Given the number of

O3EASECC

issues that are involved and the novelty of some of the issues at least, I'll go and grant that request as well.  So I'll add those additional pages.  Don't feel compelled to use them all if you don't need to.

         MS. BRETAN:  We'll do our best, your Honor.

         THE COURT:  Now, with that, is there anything else that we should do today?  Mr. Halloran?

         MR. HALLORAN:  No, your Honor, not from our perspective.

         THE COURT:  Ms. Bretan?

         MS. BRETAN:  No.  Thank you very much, your Honor.

         THE COURT:  Okay.  Well, in that event, we are adjourned.  Stay well and I look forward to receiving your papers.

         (Adjourned)