

555 California Street
12th Floor
San Francisco, CA 94104

415.875.2300
Fenwick.com

Jennifer Bretan
jbretan@fenwick.com  |  415.875.2412

August 16, 2024

**VIA ECF**
Hon. Edgardo Ramos
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 619
New York, NY 10007

      Re:    <u>SEC v. Sun, et al.</u>, Case No. 1:23-cv-2433-ER (S.D.N.Y)

Dear Judge Ramos:

We represent defendants Tron Foundation Limited, BitTorrent Foundation Ltd., Justin Sun, and Rainberry, Inc. (collectively, "Defendants"). Pursuant to Your Honor's Individual Practice Rule 2.A.ii and Order (ECF No. 71), we write to oppose the SEC's request for leave to file a motion to strike argument in Defendants' reply in support of their pending motion to dismiss (ECF No. 67, the "Reply") or for a sur-reply. ECF. No. 70. As set forth below, Defendants believe there is no merit to the SEC's request, and it should be denied. If the Court is inclined to entertain either request, Defendants would appreciate the opportunity to be heard on these matters.

Defendants' motion to dismiss (ECF No. 62, the "Motion") undeniably argued that none of the transactions assailed in the Amended Complaint constitute investment contracts under the *Howey* test. *See* Mot. at 38-39. But neither the Motion nor the Reply raised the specific "common enterprise" argument to which the SEC now seeks leave to respond (which is the second prong of the *Howey* test). Rather, Defendants argued that under *Howey*'s **third prong** (expectation of profits from the efforts of others), buyers purchasing from unknown sellers in the secondary market could not have reasonably expected that their money would be deployed *by Defendants* in a profit-generating venture. The SEC cannot be confused about Defendants' argument; the Motion expressly identified the *Howey* prong being discussed: "[a]nonymous, secondary market sales by Defendants (including alleged 'market manipulation' sales) do not satisfy *Howey*'s third prong either." Mot. at 42. Given the focus of that argument, we believed it was unnecessary to wade into whether the SEC could also satisfy the various tests for "common enterprise," as that point was *irrelevant* to the third *Howey* prong point made in the Motion and revisited in the Reply. Indeed, if the SEC is granted permission to file a sur-reply addressing the various common enterprise tests (which were not addressed in any prior pleading), Defendants will need a sur-sur-reply to state our position on this new issue. In other words, the SEC asks for three pages to respond to an issue of its own devise.

In fact, nothing was raised for the "first time" on Reply. The Motion raised the ***precise argument*** about which the SEC now complains. Focused on *Howey's* third prong, Defendants

distinguished decisions regarding secondary sales in *Terraform II* and *Coinbase*:

> Although in *Terraform*, Judge Rakoff "reject[ed]" the holding in *Ripple* to the extent *Ripple* "dr[ew] a distinction between these coins based on their manner of sale, such that coins sold directly to institutional investors are considered securities and those sold through secondary market transactions to retail investors are not," 2023 WL 4858299, at *15, *Terraform* presented a very different scenario than what is alleged here. Judge Rakoff based his decision on the allegation in *Terraform* that "defendants said that sales from purchases of *all* crypto-assets – no matter where the coins were purchased – would be fed back into the Terraform blockchain and would generate additional profits for *all* crypto-asset holders." *Id.* (emphasis original)*; see also Coinbase*, 2024 WL 1304037, at *25 (secondary market purchases could meet third *Howey* prong where "developers advertise[d] the fact that capital raised through [secondary] retail sales of toke[n]s will continue to be re-invested in the protocol"). While the SEC selectively quotes and mischaracterizes statements from the 2017 TRON Whitepaper (¶ 35) and other of Defendants' statements to mount a similar argument, that effort fails. No such similar, concrete factual allegations are identified here.

*See* Mot. at 42-43 and n.31.

Unable to address the actual argument Defendants raised in their Motion by reference to substantive supporting facts, or otherwise, the SEC's Opposition instead makes a cursory attempt to distinguish *Ripple* and asks this Court to follow *Terraform II* and *Coinbase* to hold that sales on secondary market platforms are actionable. Opp. at 28-29. This missed the point. And so, in response, Defendants' Reply reiterated the ***same*** quotations from *Terraform* and *Coinbase*, distinguished those cases once again, and cited similar reasoning in *Binance III*:

> The final type of transactions assailed by the SEC are secondary market sales. Buyers do not (and cannot) know the counterparty in any given secondary market transaction, however. It defies common sense to claim that purchasers bought "TRX" (on Bittrex or any other platform) expecting those funds would be invested in a common enterprise when **the seller is unknown**. *See Ripple II*, 2023 WL 4507900, at *22-24 (*Howey* not met for secondary market sales); *see also SEC v. LBRY, Inc.*, No. 21-cv-260, ECF No. 105 at 34:14-16 (D.N.H. Jan. 30, 2023) (declining to extend holding to secondary sales). *See* Mot. at 43 n.31. The SEC's cases provide no answer. In *Terraform II*, "defendants said that sales from purchases of *all* crypto- assets . . . would be fed back into the Terraform blockchain." 684 F. Supp. 3d at 198. In *Coinbase*, "developers advertise[d] . . . that capital raised through [secondary] retail sales of tokens will continue to be re-invested in the protocol." 2024 WL 1304037, at *25. The SEC can point to no similar representation in the AC, because none is alleged.

> *Binance III* involved representations that BNB holders would benefit from the growth of the Binance exchange (an existing business enterprise). 2024 WL 3225974, at *17-19. Buyers were told "[b]y holding BNB, you are effectively holding an influential share of the crypto project." *Id.* at *18. Such statements were critical to the Court's finding that "after the ICO, Binance continued to market the BNB to new buyers as an investment contract." *Id.* at *21 n.15. By contrast, the AC identifies no similar statements here. The SEC does not allege that any defendant told BTT buyers they would benefit from the growth of a common enterprise. And the only allegation related to "TRX" is a statement pulled out of context from the ICO whitepaper back in 2017, about "ecosystem" growth. *E.g.*, AC ¶¶ 33-34. The ICO is not at issue here. Opp. at 5 n.4; *see also Binance III*, 2024 WL 3225974, at *21 n.15 (rejecting argument that "representations made at the outset travel with the token"). *Binance III* also rejected the SEC's claims based on similarly vague representations. *Id.* at *22 ("ongoing representations about the superiority of the platform that allegedly gave the tokens their value, but more is needed.").

Reply at 22-23 (emphasis in original).

The SEC's request mischaracterizes and disregards Defendants' argument about *Howey's* third prong in the context of this case (despite the point being in bold and italics), which was that where the "***the seller is unknown***" no reasonable purchaser would assume that their "capital would be used by Defendants to increase the value of 'TRX' or BTT" (*i.e.,* to feed the supposed "enterprises" in question *in this case*). Merely using the term "common enterprise" in this context did not and does not mean that Defendants were making an argument about the second *Howey* prong. And of course, Defendants are within their right to point out that the *Terraform II* Court found secondary sales from "unknown sellers" sufficed *in that case* because the facts alleged included representations that ***all sales*** would feed back into the business enterprise. There are no such similar allegations here, as Defendants rightly pointed out in **both** the Motion and Reply. *See* Mot. at 42-43 and n.31; Reply at 22 and n.22.

The SEC has had two opportunities to rehabilitate its allegations regarding secondary sales: the Amended Complaint it filed in lieu of opposing Defendants' original motion to dismiss and in the Opposition to the present motion. It did not do so. The SEC has not and cannot explain why buyers transacting with unknown third-party sellers on the secondary market would reasonably expect the funds to be deployed *by Defendants* in an effort to return a profit.

The Court should reject the SEC's attempt to manufacture a controversy and deny the request.

Respectfully submitted,

FENWICK & WEST LLP

*/s/ Jennifer C. Bretan*
Jennifer C. Bretan