

801 California Street  
Mountain View, CA 94041

650.988.8500  
Fenwick.com

Jennifer Bretan  
jbretan@fenwick.com  |  415.875.2412

November 4, 2024

**VIA ECF**

Hon. Edgardo Ramos  
United States District Court, Southern District of New York  
Thurgood Marshall United States Courthouse  
40 Foley Square, Courtroom 619  
New York, NY 10007

Re: <u>SEC v. Sun, et al., Case No. 1:23-cv-2433-ER (S.D.N.Y)</u>

Dear Judge Ramos:

We represent defendants Tron Foundation Limited, BitTorrent Foundation Ltd., Justin Sun, and Rainberry, Inc. (collectively, "Defendants"). We write in response to plaintiff the SEC's Notice of Supplemental Authority (ECF No. 74) concerning the recent decision in *Hardin v. Tron Foundation et al.,* No. 1:20-cv-2804 (VSB) (S.D.N.Y. Oct. 23, 2024). While *Hardin* involves some surface commonalities to this case, in that it involves one of the same tokens ("TRX") and two overlapping defendants, the similarities end there. The SEC's transparent (and belated) attempt to portray that unrelated case and Judge Broderick's opinion in it as highly relevant to the case it brought does not withstand scrutiny. If anything, *Hardin* illustrates why the SEC's complaint here, which altogether lacks specific allegations identifying the who, what, when, and where of transactions supposedly violating the securities laws, much less *in the United States*, should be dismissed.

Plaintiffs in *Hardin*, a putative class action, allege that the Tron Foundation and Justin Sun (named solely as an alleged "control" person), violated Sections 12(a)(1)-(2) of the Securities Act of 1933 "by promoting, offering, and selling unregistered securities through an initial coin offering ["ICO"] of the digital asset TRX" without a registration statement. ECF No. 74-1 at 1-2. Despite having targeted the ICO in their complaint, the *Hardin* plaintiffs did not participate in it. *Id.* at 5. Instead, after the ICO, they purchased "TRX" in the secondary market on Binance. *Id.* Defendants moved to dismiss on a variety of grounds, and Judge Broderick granted the motion with respect to plaintiffs' Section 12(a)(2) claims and denied it with respect to Section 12(a)(1) claims.

This case does not involve the same transactions as *Hardin* and the distinction is a critical one. As the SEC is well-aware, Section 5 targets *particular transactions* of unregistered securities, and thus liability under it (for which Section 12(a)(1) provides a private right of action) turns on an assessment of the specific facts relating to **particular sales** of the particular **unregistered "security"** alleged. *See, e.g., S.E.C. v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998) ("Each sale of a security, then, must either be made pursuant to a registration statement or fall under a

registration exemption.")[1]; *Levitt v. J.P. Morgan Secs. Inc.*, 9 F. Supp. 3d 259, 273 (E.D.N.Y. 2014) ("[O]nce a security has been sold pursuant to a registration statement, subsequent sales are not themselves sales for which a registration statement is in effect.  Each sale of a security, then, must either be made pursuant to a registration statement or fall under a registration exemption.").  Other courts have focused on this exact principle in the context of blockchain tokens.  *See, e.g.*, *SEC v. Binance Holdings, Ltd.*, --- F. Supp. 3d ----, 2024 WL 3225974, at \*22 (D.D.C. June 28, 2024) ("Insisting that an asset that was the subject of an alleged investment contract is itself a 'security' as it moves forward in commerce and is bought and sold by private individuals on any number of exchanges . . . over an indefinite period of time, marks a departure from the *Howey* framework that leaves the Court, the industry, and future buyers and sellers with no clear differentiating principle between tokens in the marketplace that are securities and tokens that aren't.").  Simply put, **this** case does not turn on the ICO or on allegations about other transactions made by private plaintiffs in another case.

And because the alleged **transactions** at issue are different, so are the legal questions that must be addressed.  While the SEC points to *Hardin* as providing relevant authority on questions of specific personal jurisdiction and extraterritoriality, it is fundamental that those issues must be analyzed in the context of the specific claims and allegations in **this** case, not any other.  *Hardin* simply has no application here.

In finding that specific personal jurisdiction was established in *Hardin*, Judge Broderick relied on three sets of allegations made in that case: (1) social media and marketing posts relating to TRX and allegedly targeting the United States in 2018, 2019, and 2020; (2) the alleged presence of Mr. Sun at conferences in the United States in 2017 and 2018; and (3) the claimed opening of a "Tron" office in California, the operation of a U.S.-based website, the listing of "San Francisco" as the location on the Tron Foundation's Twitter account, and alleged outreach/coordination with exchanges in the United States.  ECF No. 74-1 at 13-15.  Taken as true, the court found such alleged conduct sufficed to establish that Tron Foundation and Mr. Sun engaged in "substantial suit-related conduct in the United States" giving rise to claims related to plaintiffs' specifically alleged U.S.-based purchases of TRX.  *Id.* at 15.

However, despite the SEC's suggestion that *Hardin'*s analysis should displace the required personal jurisdiction analysis here, whether the particular claims in *Hardin* arose from conduct directed to the United States is irrelevant to whether the same is true of the SEC's entirely different claims.  As this Court has held, specific personal jurisdiction requires that "the suit must arise out of the defendants' contacts which create a substantial connection with the forum state."  *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 235 (S.D.N.Y. 2019) (Ramos, J.); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (for specific personal jurisdiction, conduct must "arise out of *or relate to* the defendant's contacts with the forum").  The SEC "has the burden of establishing that the Court has jurisdiction over" each defendant.  *Shenzhen OKT Lighting Co. v. JLC-Tech LLC*, 2021 WL 4443637, at \*4 (S.D.N.Y. Sept. 28, 2021) (Ramos, J.).  That obligation must be met, not just "with respect to each defendant

---

[1] Internal citations and quotation marks have been omitted.

individually," *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. Sept. 20, 2021), but also "with respect to each claim asserted," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2019 WL 1331830, at *6 (S.D.N.Y. Mar. 25, 2019).

Though defendants respectfully disagree with Judge Broderick's assessment that the contacts with the United States alleged in *Hardin* suffice (and also contest the plausibility of some of those allegations),[2] *Hardin* at least attempts to make a connection that the SEC does not even try to make here.  In *Hardin*, plaintiffs alleged that they had bought their tokens in the United States, ECF No. 74-1 at 31, and that they did so "after being subjected to these targeted efforts—visiting TRON's website, reviewing the whitepapers, and reading TRON's social media posts," *id.* at 18.  By contrast, the SEC's Amended Complaint does nothing to specifically allege how the Tron Foundation's or Mr. Sun's contacts with the United States supposedly gave rise to the particular sales of unregistered securities alleged in this case.  Instead, the SEC offers the conclusory refrain that defendants "targeted U.S. investors" or "made unregistered domestic sales" in the United States.  ECF No. 74 at 2 n.3.  These are not sufficient, as addressed at length in Defendants' submission in connection with their pending motion to dismiss.  *See* ECF No. 62 at 11-25 (explaining that these conclusory allegations are insufficient); ECF No. 67 at 2-4 (same).

As for extraterritoriality, plaintiffs in *Hardin* alleged that they "placed their trades in Nevada and Texas" and continued to buy and sell TRX in the United States.  ECF No. 74-1 at 31.  By contrast, the SEC's Amended Complaint contains **no specific allegation** that any transaction supposedly violating the securities laws was placed from the United States.  *See* ECF No. 62 at 34-36.  Instead, the SEC generically alleges that "the Sun Defendants targeted U.S. investors with offers of TRX and BTT," (the latter token is not even at issue in *Hardin*), "and then made unregistered domestic sales of TRX and BTT to investors who bought those crypto securities while located in the U.S."  ECF No. 74 at 2 n.3.

Finally, if the SEC truly viewed *Hardin* as even *potentially* related to this case because it involved "the same or substantially similar parties, property, transactions, or events," it was obligated under the local rules to notice *Hardin* as a related case.  Rule 13(a), Rules for the Division of Business Among District Judges, S.D.N.Y (Oct. 16, 2023); Local Civil Rule 1.6, Duty of Attorneys in Related Cases ("Unless another attorney has already done so, each attorney appearing in a case must bring to the attention of the court potentially related cases, to the extent required by the Division of Business Rules in the district where the case was filed.").  The SEC did not do so and could not do so.  The cases are just not one in the same.

The legal questions at issue here require the precise application of the securities laws to the particular transactions and conduct alleged *in this case, no other.*  The SEC knows that.  This latest effort to supplement its own deficient pleading, by leaning on Judge Broderick's analysis of

---

[2] For example, *Hardin* did not distinguish between discussions in or relating to the U.S. about the Tron blockchain and protocol generally, as opposed to the TRX token.  It also overlooked that the U.S. office allegation was, in fact, contested, and the decision did not appear to account for the substantial time that has passed since that case was filed in the *forum non conveniens* analysis.

3

different transactions by different plaintiffs is telling.  Lacking precision about what conduct, undertaken by whom, and when, violated which provisions of the securities laws, the Amended Complaint should be dismissed on its own merit and *Hardin* offers nothing to save the SEC from that result.

                              Sincerely,

                              FENWICK & WEST LLP

                              /s/ Jennifer Bretan

cc:  All Counsel of Record (via ECF)