

555 California Street  
12th Floor  
San Francisco, CA 94104

415.875.2300  
Fenwick.com

Jennifer Bretan  
jbretan@fenwick.com  |  415.875.2412

January 10, 2025

**VIA ECF**

Hon. Edgardo Ramos  
United States District Court, Southern District of New York  
Thurgood Marshall United States Courthouse  
40 Foley Square, Courtroom 619  
New York, NY 10007

Re:    *SEC v. Sun, et al.*, Case No. 1:23-cv-2433-ER (S.D.N.Y)

Dear Judge Ramos:

We represent defendants Tron Foundation Limited, BitTorrent Foundation Ltd., Justin Sun, and Rainberry, Inc. (collectively, "Defendants"). We write to inform the Court of a significant recent decision by Judge Failla in *SEC v. Coinbase, Inc., et al.*, No. 1:23-cv-4738 (KPF) (S.D.N.Y. Jan. 7, 2025), certifying for interlocutory appeal Judge Failla's Opinion and Order denying in part the defendants' motion for judgment on the pleadings (the "Prior Order"), and staying all proceedings until the appeal is resolved (the "*Coinbase* Decision", attached as **Exhibit A**).

At the heart of the *Coinbase* Decision is a recognition by Judge Failla that there is "persistent disagreement [among district courts] about how to apply *Howey* to crypto-assets" (*Coinbase* at Decision 22), and that "these conflicting decisions on an important legal issue necessitate the Second Circuit's guidance" before the action should proceed (*id.* at 20). That "central question" – "how courts should apply *Howey* to crypto-asset transactions" in determining whether they reflect a securities transaction (as opposed to a transaction of commodities or other assets) (*see id.* at 25) – is also fundamental to Defendants' Motion to Dismiss pending before this Court. *See* ECF No. 62 (the "Motion").

Specifically, Judge Failla frames the matter certified for appeal as "effectively [an interpretation of] the meaning of 'investment contract,' 15 U.S.C. § 77b(a)(1), through the lens of *Howey* and its progeny, based on the pleadings and without a factual record" (*see Coinbase* Decision at 16) – a "purely legal" question (*see id.* at 17). Defendants' Motion in this case presents an identical, "purely legal" inquiry and likewise calls for this Court to interpret the meaning of "investment contract" based solely on the pleadings. *See* Motion at 38-43 (arguing that the SEC's claims fail because the alleged crypto-asset transactions at issue do not "constitute offers or sales of investment contracts" under *Howey*). Ultimately, if the crypto asset transactions at issue in this case are not securities transactions under *Howey*, the SEC's claims must be dismissed.

As discussed below, the *Coinbase* Decision also implicates several subsidiary issues addressed in Defendants' Motion, each related to the central question, and which also are expected to be decided by the Second Circuit.  See *Coinbase* Decision at 25-26.

***The Significance of a Crypto-Asset's Digital Ecosystem.***  The first subsidiary issue concerns the significance of a crypto-asset's digital ecosystem.  The *Coinbase* Decision recognizes that "[t]he significance of a crypto-asset's digital ecosystem to the *Howey* analysis . . . is a difficult issue of first impression for the Second Circuit." *Id.* at 28.  Specifically, Judge Failla notes that the Order certified for appeal before the Second Circuit "found that purchasers had a reasonable expectation to profit from the efforts of others based on the continued development of the ***ecosystem*** surrounding a crypto-asset, increasing its value in turn." *Id.* at 26 (emphasis added).

That precise argument is directly at issue in Defendants' Motion.  Defendants' Motion argues that alleged social media contests and giveaways concerning the tokens at issue are not "investment contracts" in part because contest participants could not reasonably expect profits "solely from the efforts of others."  Motion at 41.  The SEC argues in opposition that the "efforts of others" requirement is satisfied because "the potential profits derived from the increase in value of [the tokens] were based on the Sun Defendants' efforts to make the Tron ***ecosystem*** successful," which Defendants contest on reply.  ECF No. 64 at 32 ("Opposition") (emphasis added); *see also* ECF No. 67 at 19-20 ("Reply").  As a separate point, the SEC also makes reference to the significance of the "Tron ecosystem" in arguing that airdrops of the BTT token involved a "risk of loss" under *Howey*'s first prong, citing the very *Coinbase* opinion that is now certified for interlocutory appeal.  *See* Opposition at 30.

***Secondary Market Trading***.  The second subsidiary issue addressed in the *Coinbase* Decision is whether secondary market transactions of crypto-assets may constitute "investment contracts" under *Howey* as a matter of law.  *See Coinbase* Decision at 21-23, 25.  In certifying the Court's Prior Order for appeal, the *Coinbase* Decision points to conflicting authority within the Circuit concerning this subsidiary issue:  namely, *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 324-30 (S.D.N.Y. 2023) (drawing a distinction between primary sales to institutional investors and secondary sales to public buyers, which did not satisfy *Howey*), SEC *v. Terraform Labs Pte. Ltd.*, 684 F. Supp. 3d 170, 195-98 (S.D.N.Y. 2023) (declining to endorse the distinction made in *Ripple*) and the Court's own Prior Order being certified for appeal (which "then deepened the split by adopting an analysis more congruent with that of *Terraform*").  *See Coinbase* Decision at 19-21.  The *Coinbase* Decision also recognizes an opinion by Judge Jackson of the District Court for the District of Columbia in *SEC v. Binance Holdings Ltd.*, No. 23 Civ. 1599 (ABJ), 2024 WL 3225974 (D.D.C. June 28, 2024), in which Judge Jackson stated she was "inclined to agree with the approach" used in *Ripple*. *See Coinbase* Decision at 21-22.  Judge Failla finds that each of these decisions provides substantial ground for difference in opinion, necessitating Second Circuit review of the secondary market issue.  *See id.* at 20-23.

That same secondary market issue is also before this Court in Defendants' Motion.  Defendants argue that the remaining transactions challenged by the SEC in this action (aside from the social media contests and airdrops discussed above) are all anonymous, secondary market sales that

2

cannot satisfy the third prong of *Howey*. *See* Motion at 42-43; Reply at 22-23. In litigating this point, both Defendants and the SEC cite to *Ripple*, *Terraform*, and the *Coinbase* Prior Order (which was certified for appeal and stayed by the *Coinbase* Decision) – the very conflicting authority that Judge Failla found to provide "substantial ground for difference of opinion." *See* Motion at 42-43; Opposition at 28-29; Reply at 22-23 (also citing Judge Jackson's opinion in *Binance*, which was referenced as conflicting authority by the *Coinbase* Decision).[1]

***Major Questions Doctrine and Due Process Arguments***. Judge Failla writes in the *Coinbase* Decision that she had rejected arguments by Coinbase that the SEC was "barred by the Major Questions Doctrine, the Due Process Clause, or the Administrative Procedure Act from alleging that the crypto-assets transacted on Coinbase's platform were investment contracts." *See Coinbase* Decision at 4. Although those arguments were not cited as grounds to certify the Prior Order, the *Coinbase* Decision makes clear that Second Circuit may hear these arguments on interlocutory appeal as well. *See id.* at 29 n.7, 31 ("[The Court] reiterates that it certifies orders, and not legal questions, for interlocutory appeal . . . [and therefore] the Second Circuit is free to consider [these issues] on interlocutory appeal.").

The Second Circuit's potential application of the Major Questions Doctrine or the Due Process Clause to the SEC's authority to regulate crypto-assets would also affect this action. Indeed, Defendants raise a similar argument in their Motion, contending that the SEC's enforcement action violates due process because it failed to afford Defendants fair notice of the SEC's claims. *See* Motion at 4, 49-50; Reply at 25. In so arguing, Defendants note that "Congress and the courts have yet to make a definitive determination as to whether such tokens constitute securities, commodities, or something else." Motion at 4 (quoting *Risley v. Universal Navigation Inc.*, 2023 WL 5609200, at *3 (S.D.N.Y. Aug. 29, 2023)). Given the breadth of the order certified by Judge Failla for appeal, this dispositive issue may also soon be decided by the Second Circuit.

Because the central and subsidiary legal issues certified by Judge Failla for interlocutory appeal are directly relevant to the pending Motion, the result is likely to have a direct impact on the ultimate disposition here. Defendants thus believe that a pause pending the outcome of the interlocutory appeal proceedings in the *Coinbase* matter in the Second Circuit is appropriate and ask that the Court defer ruling on the Motion accordingly.

                Sincerely,

                FENWICK & WEST LLP

                /s/ Jennifer Bretan

cc: All Counsel of Record (via ECF)

---

[1] The intra-district conflict between *Ripple* and *Terraform*, as recognized in the *Coinbase* Decision, was also discussed in Defendants' February 16, 2024 pre-motion letter (ECF No. 43), the SEC's February 28, 2024 response to Defendants' pre-motion letter (ECF No. 47), and at the March 14, 2024 pre-motion conference in this action.